IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLARENCE CLAY               )
                        )
v                    )        Civ. Case No. 2:05cv854-MHT
                        )               WO
UNITED STATES OF AMERICA   )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This matter is before the court on the defendant's *pro se* motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255.  On February 6, 2003, Clarence Clay ("Clay") was convicted of one count of conspiracy to distribute and possess with intent to distribute 4 kilograms of cocaine hydrochloride, 50 or more grams of cocaine base, and 1,000 or more kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and with unlawful use of a communication facility, a telephone, in violation of 21 U.S.C. § 843(b). On April 14, 2003, Clay was sentenced to 50 months' imprisonment on the conspiracy count and 6 months' imprisonment on the communications count.

Clay appealed, raising the following issues:

1.    Whether the district court erred in concluding that the prosecutor's comments before the grand jury did not substantially influence the grand jury's decision to return the superseding indictment in this case?

2.    Whether the evidence was sufficient to sustain Clay's conviction for the unlawful use of a communication facility, to wit, a telephone, in violation of 21 U.S.C. § 843(b)?

> 3.   Whether drug quantity becomes an element of the offense under federal drug trafficking statutes only when it may be used to impose a sentence above the applicable statutory maximum?

*U.S. v. Clay*, 376 F.3d 1296, 1300 (11th Cir. 2004).  On July 15, 2004, the Court affirmed his convictions.  *Id.*

On September 2, 2005, Clay filed his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  In his motion, Clay asserts the following claims:

> 1.   Ineffective assistance of counsel; for failure of my Attorney Stephen R. Glassroth, to protect my Due Process Rights that were violated; when I was allowed to be convicted of a Conspiracy when none of the objects that constituted the conspiracy were found to be true by the jury.  My attorney erroneously failed to legally challenge the judicial invasion of the Court in the jury's province to accept a verdict of guilty; when the special verdict form required the judge to unanimously agree on the objects and amounts of the drugs that constituted the alleged conspiracy.
>
> 2.   Ineffective assistance of counsel; for failure of my Attorney Stephen R. Glassroth, to accept the retrial offer of the Honorable Myron H. Thompson; as it related to the failure of the jury to reach a verdict on the objects and the amount of drugs that I was allegedly responsible for.  My attorney did not confer with me, but made a complete arbitrary decision on his own; and in the process allowed my 5th and 6th Amendment rights to be blatantly violated.
>
> 3.   Ineffective assistance of counsel; for failure of my Attorney Stephen R. Glassroth, to raise on my direct appeal, the disparity of sentences that were rendered by the Court, as it related to my alleged

2

co-defendant Sonja Brown. My attorney raised
this issue and preserved it at my sentencing
hearing; but completely failed to raise it at the
direct appeal level. In essence, my attorney failed
to present a clear and obvious violation of my
Due Process rights; when the sentencing court for
no justifiable legal reason raised my sentence
approximately 4 times higher than that of my
alleged co-defendant. The record will clearly
show that it was based on personal bias and
opinion of the District Court judge, rather than on
sound legal facts of law.

4.    Ineffective assistance of counsel; for failure of my
Attorney Stephen R. Glassroth, to preserve, and
thereby abandoning on direct appeal the fact that
the District Court's findings usurped the role of
the jury; and violated the core value of Apprendias
identified in *U.S. v. Reese*, 382 F.3d 1308 (11th
Cir. 2004); due to the fact that Mr. Clay properly
preserved his *Apprendi*-type argument at
sentencing.

5.    Prosecutorial misconduct: as it related to the
Assistant United States Attorneys, Louis V.
Franklin & Terry F. Moorer, conspiring to
knowingly and intentionally present to the jury
and the court the perjured and fabricated
testimony by Roderick Blanding. Mr. Blanding's
testimony was proven to be untrue, fabricated,
and perjured. Due to the fact that there was no
evidence connecting Mr. Clay with drug
trafficking of any kind; the Government
intentionally utilized this witness in an attempt to
establish drug culpability on the behalf of Mr.
Clay – before the jury and the Judge of the Court.

(Doc. No. 2, p. 5.)

The Government responded to Clay's motion, asserting that his prosecutorial

3

misconduct claim was not raised on direct appeal and is procedurally defaulted.  (Doc. No.

15-1, pp. 6-7.)  In addition, the Government asserts that Clay's ineffective-assistance-of-

counsel claims are without merit. (Doc. Nos. 15-1 & 18.)  Clay was afforded an opportunity

to respond to the Government's submissions, and has done so.  (Doc. No. 22-1.)  No

evidentiary hearing is required because the facts are adequately developed in the record.

After due consideration and upon review of the motion and numerous pleadings filed in this

case, the court concludes that Clay's motion should be denied.

## II.  THE FACTS

On direct appeal, the Court summarized the facts as follows:

> John W. Barnes ("Agent Barnes") is a Senior Special
> Agent with the United States Customs Service. At the time of
> the events in this case, Agent Barnes was assigned to the High
> Intensity Drug Trafficking Area ("HIDTA") task force in
> Montgomery, Alabama. The HIDTA task force is a federally
> funded investigative task force composed of federal, state, and
> local law enforcement officers. HIDTA's stated mission is to
> locate, identify, and dismantle drug smuggling/trafficking
> organizations.

> In December 1997, Agent Barnes received a request from
> Bill Baker ("Agent Baker"), a fellow Customs agent in
> Cincinnati, Ohio, seeking information about an individual by the
> name of "John Riley" in Montgomery, Alabama. Agent Barnes
> requested and received information from the Montgomery
> Police Department, which he forwarded to Agent Baker in
> Cincinnati. Agent Barnes confirmed that the John Riley, who
> was the subject of Agent Baker's interest, was also the John
> Riley identified through the Montgomery Police Department.
> Thereafter, Agents Barnes and Baker began working together in
> a narcotics investigation that impacted Alabama and Kentucky.

> In April 1998, Tony Montoya ("Montoya"), a

4

cooperating individual ("CI"), assisted Agents Barnes and Baker, along with others, in arranging a controlled meeting between Montoya and Riley. The purpose of the meeting was for Riley to deliver money to Montoya for marijuana that had previously been delivered to Riley. When the meeting occurred, Agent Barnes and others through the use of surveillance equipment were able to monitor Riley giving Montoya $77,500. In addition to monitoring Riley, the agents monitored the money that Riley gave to Montoya as it left Montgomery and traveled across the border into Mexico through Laredo, Texas. The following month, a second delivery occurred. After arriving in Montgomery, Montoya contacted Riley via pager and cell telephone. Agent Barnes supervised these contacts. Again, the agents set up surveillance in an adjoining hotel room and monitored the delivery of approximately $60,000 by Riley to Montoya. Montoya continued to provide agents with information about Riley and his contacts outside the district.

Unable to identify Riley's local co-conspirators, Agent Barnes decided to obtain pen registers for Riley's cellular telephone with the hopes of obtaining authorization to intercept Riley's telephone conversations. Records obtained through subpoena revealed that Clay subscribed to the cellular telephone number used by Riley to communicate with Montoya and other CIs, and the cellular phone bills went to Clay's home address at 1030 Lynwood Drive, Montgomery, Alabama. Based on this information about the unlawful use of the cellular telephone subscribed to by Clay, the government sought and obtained a wire tap order. On June 3, 1999, eleven days into the wire tap, agents intercepted a conversation between Clay and Riley. During this conversation, Clay complained about the poor quality of the marijuana and his inability to sell it. Riley tried to relieve Clay's anxiety by promising to pick up the marijuana and give him some new marijuana when the next shipment came in. Additionally, Clay and Riley used numbers that were consistent with those used by Riley in a conversation with unindicted co-conspirator, Louis Calvin Cook ("Cook"), when Riley and Cook talked about marijuana.

When Riley realized that he was being followed by agents, he met with Clay and gave him the cellular telephone.

5

Clay took the cellular telephone to a local Powertel office and changed the number. Additionally, Clay specifically requested that the SIM card (i.e., a computer chip that identifies the phone number with that card) be changed, resulting in the termination of the first court authorized wiretap for that particular cellular telephone. While in possession of the cellular telephone, Clay answered the telephone and identified himself as Riley's "partner" and promised to deliver a message to Riley. After changing the number to the aforementioned cellular telephone, Clay returned it to Riley.

On July 15, 1999, agents executed several search warrants at locations associated with Riley, including Clay's residence at 1030 Lynwood Drive, Montgomery, Alabama. The agents also searched Riley's stash house at 1702 French Street, Montgomery, Alabama, and Riley's main address at 5713 Portsmouth Drive, Montgomery, Alabama. Agents seized several firearms from each of these locations (i.e., two from Clay's residence, eight from Riley's home residence, and four from Riley's stash house).

The evidence produced at trial demonstrated that Clay was the subscriber for the telephone that Riley used to conduct his drug trafficking business from 1996 to 1999 through which Riley possessed and distributed thousands of pounds of marijuana, more than fifty grams of cocaine base, and four kilograms of cocaine hydrochloride. During the trial, the government also presented the testimony of co-conspirator Roderick Blanding ("Blanding"), who testified that he worked for Riley. According to Blanding, Clay was one of Riley's regular customers.

*United States v. Clay*, 376 F.3d 1296, 1298 -1299 (11th Cir. 2004).


## III.  DISCUSSION

### A.  Ineffective Assistance of Counsel

#### 1.    General Principles

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of an ineffective-assistance-of-counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *U.S. v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*,

466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time."  *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687.  Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right.  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697.

8

*See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 2.    The *Apprendi*-related Claims

In Claims One and Four of his § 2255 motion, Clay argues that trial counsel should have argued that, because the jury failed to determine the "objects" of the conspiracy unanimously and beyond a reasonable doubt**,** the court erred in allowing him to be convicted and sentenced under the conspiracy count. Specifically, Clay contends that trial counsel failed to preserve at trial and abandoned on appeal a challenge to his conviction and sentence based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004), and  *U.S. v. Booker*, 543 U.S. 220 (2005). In other words, Clay asserts that defense counsel failed to argue that "judge-determined facts established by a mere preponderance of the evidence violate[] the Sixth Amendment right to a jury trial." (Doc. No. 2, pp. 23-24.)

The underlying *Apprendi*-related claim concerning the jury's failure to reach a unanimous decision on the amount of drugs attributed to Clay was addressed by the Court

on direct appeal.  The Court determined as follows:

Clay contends that his conspiracy conviction should be reversed because the jury could not unanimously agree that the amount of drugs alleged in the superseding indictment should be attributed to Clay.  No authority supports this *Apprendi*-related contention, and most of Clay's argument is nothing more than an attack on this Court's holding in *Sanchez*.  Clay received a 50-month sentence for violating § 841(b)(1)(D), when the maximum sentence that statutory provision sets for the smallest quantity of drugs is 60 months.  Under *Sanchez*, no error occurred.

Clay recognizes that in *Sanchez*, we held that drug type and quantity are not required to be alleged in the indictment, submitted to the jury, and proved beyond a reasonable doubt, as long as the statutory maximum punishment is not exceeded.  *See Sanchez*, 269 F.3d at 1268 ("To repeat the oft-repeated, *Apprendi* explicitly limited its holding to facts 'that increase [] the maximum penalty for a crime beyond the prescribed statutory maximum.'  Therefore *Apprendi* has no effect on cases in which a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction.").  Clay's contention is that because the jury was asked to ascertain the quantity of drugs for which he was accountable and was unable to unanimously agree on that, the government failed to meet its burden of proving every element of the charge beyond a reasonable doubt.  The flaw in Clay's reasoning is that the specific quantity of drugs for which he was accountable is not an element of the crime charged.  *See United States v. Matthews*, 168 F.3d 1234, 1245 (11th Cir. 1999).  Under *Sanchez*, specification of quantity does not become essential unless the amount of the drugs involved is used to increase the defendant's sentence beyond the applicable maximum penalty for the smallest detectable quantity.  In this case it was not.

Had the district court sentenced Clay to a term of imprisonment above the 60-month maximum for any detectable quantity of drugs, *see* § 841(b)(1)(A) (maximum sentence of life if 1000 kg or more of marijuana); § 841(b)(1)(B) (40-year maximum if more than 100 of marijuana), Clay would have a

point under *Apprendi*.  However, recognizing that the failure of the jury to agree on a specific drug quantity limited the type of sentence it could impose on Clay, the district court sentenced him to only 50 months, which is below the 60-month maximum that he could have received pursuant to § 841(b)(1)(D). Therefore, in light of our reasoning in *Sanchez*, the 50-month sentence was in the permissible range and the district court did not plainly err.  *See also United States v. Richards*, 302 F.3d 58, 66 (2d Cir. 2002) ("[D]rug quantity becomes an element of the offense under § 841 only where it may be used to impose a sentence above the statutory maximum sentence" because "the constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed maximum for the offense of conviction").

*Clay*, 376 F.3d at 1301.

To the extent Clay contends that appellate counsel was ineffective for emphasizing the Eleventh Circuit's opinion in *Sanchez* instead of the Supreme Court's opinion in *Apprendi*, his contention is unavailing.  Although the Court discussed *Sanchez*, the Eleventh Circuit also concluded that Clay's *Apprendi*-related claims were without merit.  The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel.  *See Jackson v. Dugger***,** 931 F.2d 712, 715 (11th Cir. 1991).  Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *U.S. v. Nyhuis***,** 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance").  This court therefore concludes that Clay has failed to demonstrate that appellate counsel's emphasis on the *Sanchez* opinion fell below an objective

11

standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

To the extent Clay asserts that counsel was ineffective for failing to provide a successful avenue for him to amend his appellate brief with claims challenging his conviction and sentence in light of the holdings in *Blakely*, *Booker*, and other *Apprendi*-related opinions,[1] the court concludes that Clay's contention is likewise without merit. The Eleventh Circuit determined that Clay's contention that his conspiracy conviction should be reversed because the jury could not unanimously agree on the amount of drugs was without merit. *See Clay*, 376 F.3d at 1300-01. The Court specifically determined that Clay's *Apprendi*-related claims must fail because his 50-month sentence was below the 60-month sentence he could have received. *Id.*, at 1301. Consequently, Clay has failed to demonstrate that his counsel's failure to assert more specific *Apprendi*-related claims at trial and on direct appeal fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

### 3.    The Disparity of Sentences

Clay asserts that appellate counsel was ineffective for failing to raise a claim challenging the disparity between his and his co-defendant's sentences. The Government argues that the disparity in sentences is justified because Clay received a higher offense level than his co-defendant, Sonja Brown ("Brown"). The record demonstrates that Brown's

---

[1] In *Cunningham v. California*, No. 05-6551, ___ U.S. ___, 2007 WL 135687, at *4 (January 22, 2007), the Court noted that its decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States  v. Booker,* 543 U.S. 220 (2005), establish that the United States Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant.

offense level was 14, that her criminal history category was 1, and that she was sentenced to 15 months' imprisonment on the conspiracy count. (Doc. No. 15-3, 57.) Thus, the guideline range for Brown's conspiracy conviction was 15 to 21 months' imprisonment. (*Id*.) Clay's offense level was 24, his criminal history category was 1, the guideline range for his conspiracy conviction was 51 to 60 months' imprisonment, but he was sentenced to 50 months' imprisonment on the conspiracy count,. (*Id.*, at 68.)

At sentencing, trial counsel argued that the Court's findings concerning relevant conduct with respect to Brown and Clay were inconsistent. (*Id*., at 76.) Specifically, trial counsel argued that, although the facts demonstrated that both Brown and Clay had provided another defendant, John Riley ("Riley"), with cellular phones, the court found that Brown did not foresee that providing the telephone would "enable [Riley] to conduct his business." (*Id*.) Trial counsel questioned the court's determination that the evidence demonstrated that Clay should have known, based on his relationship with Riley, that at least 100 kilograms of marijuana were foreseeable as to Carlie Bill Thompson, another co-defendant. However, the court found differences between each defendants' relevant conduct, specifically finding that, due to the nature of Brown and Riley's amorous relationship, Riley did not have "the control over Mr. Clay that he had over Ms. Brown." (*Id*., at 77.) The court specifically recognized "that the nature of Ms. Brown's involvement was quite different from Mr. Clay's" *Id.*

The record clearly demonstrates that both Brown and Clay had a special relationship with Riley; however, it is likewise clear that Riley's relationship with Brown was based on

13

mutual attraction, while his relationship with Clay was based on business and friendship.[2] Therefore, although both defendants were convicted of conspiracy, their specific roles in relation to the specific conduct were obviously different.  More importantly, Clay has failed to present any evidence demonstrating that, in light of the facts used to calculate each defendants' offense level, the disparities in sentencing were so severe as to give rise to a constitutional violation. For example, Clay has failed to demonstrate that he was similarly situated with Brown or that the reason for the differential treatment was based on a constitutionally protected interest. *See Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929 (11th Cir. 1986); *Boglin v. Thomas*, No. CA 00-0035-CB-C, 2001 WL 102337, *9 (S.D. Ala. Jan. 2, 2001). Consequently, to the extent Clay asserts that appellate counsel was ineffective for failing to present a claim challenging his sentence based on the disparities between his and Brown's sentences, the court concludes that Clay has failed to demonstrate that counsel's failure to raise this non-meritorious argument on appeal fell below an objective standard of reasonableness and prejudiced his case.  *See Strickland*, *supra*.

### 4.    The Offer for a Mistrial

Clay contends that trial counsel was ineffective for failing to consult with him concerning the trial court's "offer" to retry the drug quantity issue.  Specifically, Clay asserts that trial counsel "forfeited this most important offer to confront the fact that there was no evidence of any kind that connected his client with any drugs."  (Doc. No. 2, p. 17.)

---

[2] At sentencing, the court noted that Clay "was in a friendship with knowledge of what was going on" and that "there was nothing to blind him as to the dramatic depth and breadth of this operation."  (Doc. No. 15-3, p. 16.)

Prior to sentencing, the following exchange occurred:

THE COURT:        The Court calls the case of United States of America vs.
                  Clarence Clay.  Actually, I'll call the cases of Clarence
                  Clay as well as Sonja Brown.  There are several common
                  issues that we may as well take up together.  Now the
                  court still has outstanding a motion for judgment of
                  acquittal by both defendants, and I wanted some
                  clarification first of all from the United States as to
                  whether they intend to pursue a retrial with regard to the
                  amount of drugs that the jury could not reach a verdict
                  on.

FRANKLIN:              No, Your Honor, not at this point.

THE COURT:        Does the defendant want a retrial on that issue?

GLASSROTH:        On the issue of the jury's failure to arrive at a quantity
                  determination?

THE COURT:        Yes.

GLASSROTH:        No, sir.

THE COURT:        Well in light of the fact that both defendants – well, let
                  me ask Ms. Brown's attorney.

JONES:            No, sir.

THE COURT:        In light of the fact that both the Government and the
                  defendants, that is Clarence Clay and Sonja Brown, do
                  not wish a retrial on the amount of drugs issued, the
                  Court will sentence both defendants, that is Clay and
                  Brown, within the limits allowed by *Apprendi*.  The
                  motions for judgment of acquittal will be denied as to
                  both defendants. So we'll now proceed with sentencing.

(Doc. No. 3, p. 25; Sentencing Hearing Transcript, pp. 2-3.)

First, the court notes that Clay's contention that the court "offered" to retry the drug

15

quantity issue is a misinterpretation of what took place at the hearing. The transcript demonstrates that the trial judge merely asked counsel to clarify whether his motion for a judgment of acquittal included a motion for a new trial with respect to the drug quantity issue. The trial court, however, did not *offer* a retrial on the drug quantity issue at any point in the proceedings. (*Id*.)

Moreover, in the context of this case trial counsel was not obligated to confer with his client when deciding whether to pursue a motion for a new trial. In *Florida v. Nixon*, 543 U.S. 175 (2004), the Court discussed when a criminal defense attorney has a duty to consult with his client.

> An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. That obligation, however, does not require counsel to "obtain the defendant's consent to 'every tactical decision.'" *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval). But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has the "ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Wainwright v. Sykes*, 433 U.S. 72, 93, n.1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

*Nixon*, 543 U.S. at 187. Because trial counsel was not obligated to consult with Clay prior to forgoing a motion for a new trial with respect to the drug quantity issue, this court

concludes that Clay has failed to demonstrate that counsel's actions were objectively unreasonable. *See Strickland*, *supra*.

The court also notes that counsel's decision to forego a motion for a new trial with respect to the drug quantity issue appears to be a matter of sound strategy under the circumstances of this case. In many respects, Clay's arguments presented here are premised on the erroneous notion that a new trial would have addressed anew the issue of his guilt. Plainly, that view is incorrect. The jury found Clay guilty of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride, cocaine base, and marijuana, and the jury's failure to reach agreement on the drug quantity issue does not in any way undermine the validity of that verdict. *See Clay*, 376 F.3d at 1301 (determining that the specific quantity of drugs for which Clay was accountable was not an element of the conspiracy charge). Even if the trial court had retried the drug quantity issue, the best Clay might have hoped for was receipt of the same sentence. If a new jury had reached agreement on drug quantity, Clay may well have received a higher sentence. Given Clay's risk of receiving a higher sentence, counsel's decision to forego a motion for a new trial on the basis of the jury's failure to reach a unanimous verdict on drug quantity was objectively reasonable under the circumstances. *See Strickland*, *supra*. Finally, the court concludes that, even assuming *arguendo*, that trial counsel's performance was objectively unreasonable (which it surely was not), for the reasons already discussed Clay has failed to demonstrate that he suffered prejudiced as a result of trial counsel's failure to pursue a motion for a new trial with respect to the drug quantity issue. *See Strickland*, *supra*.

Based on the foregoing, the court concludes that Clay's § 2255 motion with respect to his claims of ineffective assistance of trial and appellate counsel are due to be denied.

## B. Procedural Default

Clay's prosecutorial misconduct claim is procedurally defaulted because Clay failed to raise this claim on direct appeal. *U.S. v. Frady*, 456 U.S. 152 (1982); *Murray v. Carrier*, 477 U.S. 478 (1986); *Hill v. Jones,* 81 F.3d 1015 (11th Cir. 1996). However, a movant may avoid the procedural bar by demonstrating "cause and actual prejudice or actual innocence." *Jones v. U. S.*, 153 F.3d 1305, 1307 (11th Cir. 1998). Clay asserts that he satisfies the cause and prejudice standard because appellate counsel failed to raise his prosecutorial misconduct claim on direct appeal. Specifically, Clay contends that appellate counsel was ineffective for failing to assert that the Government knowingly used perjured or false testimony of a witness, Roderick Blanding ("Blanding"). Clay asserts that Blanding's testimony concerning the number of times he sold drugs to him and the amount of marijuana attributed to him was false. (Doc. No. 2, p. 27-28.)

It is well-settled law that the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the 'rudimentary demands of justice.'"*Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *DeMarco v. U.S.*, 928 F.2d 1074, 1076 (11th Cir. 1991). However, only the knowing use of perjured testimony constitutes a due process violation. *U.S. v. Lopez*, 985 F.2d 520, 524 (11th Cir. 1993). "In connection with the general claim that the prosecution colluded with the witness to commit perjury . . . the burden is on the [defendant] to allege and

prove, not conclusions, but facts which would entitle him to relief." *Smith v. U.S.*, 252 F.2d 369, 371 (5th Cir. 1958).[3]

Clay points to certain statements that a probation officer made at sentencing to support his argument that the Government knew that Blanding's testimony was false.  During the sentencing proceeding, a probation officer stated that he "did not find Blanding to be extremely credible because of the way he testified."  (Doc. No. 15-3, p. 4; Sentencing Transcript, p. 10.)  In addition, the probation officer noted that Blanding mumbled and looked down during direct examination and that Blanding's testimony was inconsistent with a prior statement given to an agent at Maxwell Air Force Base.[4]  (*Id.*, at pp. 10-11.)

Neither Blanding's demeanor on the stand during direct examination nor his prior inconsistent statements demonstrate that his testimony was false or that the Government had knowledge of its falsity.  *See*, *e.g.*, *United States v. Gibbs*, 662 F.2d 728, 730 (11th Cir. 1981) (Prior inconsistent statements are insufficient to demonstrate knowing use of false testimony).  *See also Tennessee v. Street*, 471 U.S. 409, 414 n.5 (1985) (Differences in statements do not compel conclusion that statements are false but only reflect on credibility.); *Overdear v. United States*, No. 05-13443, 2006 WL 3826673, *1 (11th Cir. 2006) (noting that "it may well be that the witness' subsequent statements were true, in which event the claim of inconsistency is not a constitutional objection" (citation omitted)).  Based on the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[4] The court noted that Blanding "perked up" on cross-examination.  (Sentencing Transcript, p. 12.)

foregoing, the court concludes that Clay has failed to show that the Government engaged in the deliberate deception of the court and jurors by the presentation of known false evidence. Consequently, Clay has failed to demonstrate that counsel's failure to raise this non-meritorious issue on appeal fell below an objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*. Because the court concludes that Clay's allegation of ineffective assistance of counsel is wholly without merit, Clay has failed to demonstrate cause for his procedural default.

Clay also asserts that this court should consider his prosecutorial misconduct claim because he is actually innocent. The "actual innocence" standard is set forth in *Schlup v. Delo,* 513 U.S. 298, 314 (1995), and is linked to a "fundamental miscarriage of justice" analysis. *Id.* at 315. Innocence is not an independent claim; rather, it is the "gateway" through which a movant must pass before a court may consider constitutional claims which are defaulted or barred. *Id.* This exception applies where a movant establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup, supra*. Actual innocence is defined as "factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Sawyer v. Holder*, 326 F.3d 1363, 1367 (11th Cir. 2003). Nothing in the record before the court calls into question the jury's verdict in this case. The court therefore concludes that Clay's conclusory claim that "the record supports the fact that numerous constitutional violations took place to convict someone who was actually innocent of the

offense"[5] fails to satisfy the standard set forth in *Schlup*, *supra*.  Consequently, Clay's procedurally defaulted claim is foreclosed from review in this § 2255 motion.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion be denied as the claims presented therein entitle the defendant to no relief.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before March 12, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of*

---

[5] (Doc. No. 22-1, p. 9.)

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 26th day of February, 2007.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE